IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:20-CV-1888-D |
| VS. | § | |
| | § | |
| INTERSTATE BATTERY SYSTEM | § | |
| INTERNATIONAL, INC., | § | |
| INTERSTATE BATTERIES, INC., | § | |
| POWERCARE AND SERVICE | § | |
| SOLUTIONS, INC., and | § | |
| POWERFX, LLC, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this insurance coverage dispute, the court must decide whether plaintiff RLI Insurance Company ("RLI") has a duty under an insurance policy to defend three defendants in this case in an underlying state-court lawsuit: *PowerFX, LLC v. PowerCare and Service Solutions., Inc. and Interstate Battery System International, Inc.*, No. C2018-1426B (207th Jud. Dist. Ct., Comal Cnty. Tex.) (the "Underlying Lawsuit"). The answer to this question turns on whether a provision in the insurance policy excludes coverage. For the reasons explained, the court concludes that the insurer has a duty to defend. It therefore grants partial summary judgment in favor of defendants Interstate Battery System International, Inc. ("Interstate Battery System"), Interstate Batteries, Inc. ("Interstate Batteries"), and PowerCare and Service Solutions, Inc. ("PowerCare") (collectively, "Defendants," unless

the context indicates otherwise), and denies RLI's motion for partial summary judgment.[1]

I

RLI (the insurer) sues Defendants (the three defendants who are insureds) seeking a declaratory judgment that it does not owe a duty under the insurance policy at issue (the "Policy") to defend them in the Underlying Lawsuit.[2]  RLI issued the Policy to Interstate Battery System.[3]  The Policy is a financial products policy and covers the period May 1, 2018 to May 1, 2019.  The Policy provides, *inter alia*, that RLI will insure Interstate Battery

_____

[1]The court treats the motions as motions for partial summary judgment.  RLI's fourth amended complaint seeks a declaratory judgment on both the duties to defend and indemnify.  But as discussed below, *see infra* note 15, the parties seek summary judgment on the duty to defend but not the duty to indemnify.  Under N.D. Tex. Civ. R. 56.3(c), a motion that seeks summary judgment on fewer than all claims or defenses must be styled as a motion for partial summary judgment.

[2]Because both sides move for summary judgment, the court will recount the evidence that is undisputed and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e. g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) ( Fitzwater, J.)).

[3]Interstate Battery System is the named insured in the Policy.  RLI's fourth amended complaint appears to dispute that PowerCare (also being sued in the Underlying Lawsuit) and Interstate Batteries are covered under the Policy based on the contention that they are not a covered "Entity"(as defined in the Policy as a subsidiary of the insured).  This issue, however, has not been further briefed or disputed by RLI in this summary judgment motion.

Defendants maintain in their brief that Interstate Batteries and PowerCare are subsidiaries of Interstate Battery System and are therefore covered as "Entities" under the Policy.  Defendants also adduce evidence that Interstate Batteries and PowerCare are wholly-owned subsidiaries of Interstate Battery System (although it appears that PowerCare does not exist anymore because it was merged with Interstate Battery System, it was a subsidiary until 2019).  The court concludes that PowerCare and Interstate Batteries are covered as "Entities" under the Policy and are therefore also insured.

- 2 -

System (and its subsidiaries PowerCare and Interstate Batteries) for certain litigation expenses: "The Insurer will pay on behalf of the Entity, Loss which the Entity is legally obligated to pay as a result of a Claim first being made during the Policy Period, or during the Discovery Period (if purchased), against the Entity for Wrongful Acts."[4]  ECF No. 44-1, App. at 019 (emphasis omitted).[5]  It also provides that RLI "shall have the right and duty to defend any Claim covered by this coverage section."  *Id.* at 030 (emphasis omitted).

But this coverage obligation is subject to exclusions.  The most pertinent one—on which the parties primarily focus—excludes coverage for claims arising from an obligation in or breach of contract:

> The Insurer shall not be liable for Loss on account of any claim made against any Entity based upon, arising out of, directly or indirectly resulting from or in consequence of . . . for any actual or alleged obligation under or breach of any written, oral, express, or implied contract or agreement except to the extent that the Entity would have been liable in absence of such contract or agreement.

*Id.* at 022-23 (emphasis omitted).  The scope of this exclusion and its application to the Underlying Lawsuit are the subjects of the present dispute.

In the Underlying Lawsuit, defendant PowerFX, LLC ("PowerFX") is suing Interstate Battery System and PowerCare on claims for fraudulent inducement and negligent

---

[4]In this section of the Policy, "Claim" means any "civil proceeding," and "Loss" means any monetary damages or judgments.  "Wrongful Acts" means "any actual or alleged error, omission, act, misstatement, misleading statement, or breach of duty."

[5]The court for clarity when citing a brief or appendix will do so by its ECF docket number and, if applicable, by the specific page or pages of the document cited.

- 3 -

misrepresentation.  PowerFX alleges that PowerCare and PowerFX entered a "Master Services Agreement" (the "Agreement") on March 20, 2017.  Under the Agreement, PowerCare "was obligated to deliver [to PowerFX] and provide maintenance" for its cloud-based battery rejuvenation and management solution product named "Battery Medic." ECF No. 44-1, App. at 98 n.2, 101.  In return, PowerFX would market the product and "perform[] demonstrations and obtain[] commitments from multiple entities who could benefit from the Battery Medic." *Id.* at 101.

In the summer of 2017, however, the Agreement ran into "immediate problems." *Id.* The Battery Medic machines PowerFX sent to customers failed to function and even caught fire.  To respond to these problems, the parties signed a "temporary interim agreement" (the "Second Agreement") in December 2017.[6]  But shortly thereafter, PowerCare and Interstate Battery System terminated their dealings with Power FX.  PowerFX was left "without [its] past time and financial investments and without the ability  to generate the massive profits promised" by PowerCare and Interstate Battery System.  *Id.* at 103.

PowerFX alleges that much of its behavior—including entering into the Agreement—was the result of misrepresentations made by Power Care and Interstate Battery System regarding the performance of the Battery Medic.[7]  Most of the misrepresentations

_____

[6]The Second Agreement modified the terms of the Agreement in ways not relevant to the present motions.

[7]The pleading does not specify to whom Interstate Battery System made the misrepresentations.  It alleges that a number of misrepresentations were made before January 2017 "to Plaintiff."  ECF No. 44-1, App. at 099-100.  But PowerFX was not formed until

were made in September, October, and November 2016, before the Agreement was signed.

The misrepresentations related primarily to the quality of the Battery Medic product. They included, *inter alia*, that Interstate Battery System had a full-time staff for training (which it did not) and that the Battery Medic worked on all batteries (which it did not); Interstate Battery System owned the intellectual property to the computers to operate Battery Medic (which it did not); the Battery Medic could stream data to the cloud or could be exported to any file type (neither of which it could do); Interstate Battery System had set aside capital for the project (which it had not); and the Battery Medic was being used by companies (like Amazon) who did not actually use the product.[8]

PowerFX alleges that "[e]very dollar and minute that PowerFx spent on Battery Medic was due solely to the Defendants' false statements." *Id.* at 105. Due to these misrepresentations regarding the functionality and features of Battery Medic, "PowerFX created their business model, obtained investments, and made agreements with 'Service

---

January 9, 2017. Accordingly, the court reads the references "to Plaintiff" to refer to PowerFX's founders (Scott Parker, Nadine Sheehan, Galen Gardner, and Steve Smith).

[8]As discussed above, *see supra* note 7, the pleading alleges that most of these misrepresentations (made before January 9, 2017, when PowerFX was formed) were made "to Plaintiff," i.e., PowerFX, despite the fact that PowerFX did not exist at the time. Because the parties do not dispute whether the court can consider allegations of misrepresentations made to an entity before that entity was formed (and appear to assume that it can), the court will assume *arguendo* that it can consider these allegations as relevant misrepresentations that induced PowerFX to enter into the Agreement. The court will consider these allegations even though, according to the summary judgment record, PowerFX did and not come into existence until after the misrepresentations were made (PowerFX appears to have relied on these alleged misrepresentations *after* it was formed).

Partners' in the field."  *Id.* at 101.  PowerFX also suffered "injury through the loss of past time and expenses and expected profits in the future," and "enter[ed] into further commitments of time and money, and continued redirection of resources away from other business ventures."  *Id.* at 106, 108.

## II

### A

It is undisputed that Texas law applies in this case.  In Texas, "[t]he duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy."  *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (citation omitted).  "Texas follows the 'eight-corners' rule, under which the court looks only to the third-party plaintiff's pleadings and the provisions of the insurance policy in determining whether an insurer has a duty to defend."  *Trammell Crow Residential Co. v. Va. Sur. Co.*, 643 F.Supp.2d 844, 849 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)).  "Neither facts outside the pleadings nor the truth or falsity of the allegations should be considered, and the allegations against the insured should be 'liberally construed in favor of coverage.'"  *Id.* (quoting *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308); *see also Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 597 (5th Cir. 2011) ("[W]e may not infer additional facts that are not in the pleadings.").  The court must "resolve all doubts regarding the duty to defend in favor of the duty."  *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (citing *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187

(Tex. 2002)).  Under the "eight-corners" rule,

> [i]f the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend.  If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend, but we resolve all doubts regarding duty to defend in favor of the duty.

*Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006) (footnotes omitted).  "If an insurer has a duty to defend any portion of a suit, the insurer must defend the entire suit." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 395 (5th Cir. 2001).

The insured has the initial burden of showing that a claim is potentially within the scope of policy coverage, and, once the insured's burden is met, "the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (emphasis in original) (citing Tex. Ins. Code Ann. art. 21.58(b) (Vernon Supp. 1997)) (collecting Texas cases).  "If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citations omitted).  "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008).

B

The parties' summary judgment burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial. To be entitled to summary judgment on a matter for which it will have the burden of proof, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). The court has noted that the "beyond peradventure" standard is "heavy." *See, e.g., Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.).

When the summary judgment movant will not have the burden of proof at trial, it need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Defendants have met their initial burden.  They have shown, and RLI does not dispute, that the allegations of the Underlying Lawsuit, taken as true, potentially state a cause of action within the terms of the Policy: the Underlying Lawsuit is a "Claim" (civil proceeding) that alleges "Wrongful Acts" (misleading statements) causing "Loss" (monetary damages) first asserted during the Policy period.

Because Defendants have made the required threshold showing, the burden has shifted to RLI to establish that it has no duty to defend because an exclusion applies.  *See Northfield*, 363 F.3d at 528.

IV

The court now considers whether RLI has met its burden to establish an applicable exclusion.

A

The court first interprets the scope of the Policy's contract exclusion.[9]  This exclusion precludes coverage of claims made against an insured "based upon, arising out of, directly or indirectly resulting from or in consequence of . . . any actual or alleged obligation under or breach of any written, oral . . . contract or agreement . . . ."  ECF No. 44-1, App. at 022-23.

---

[9]While there are multiple exclusion provisions, RLI focuses the majority of its briefing on the Policy's contract exclusion, although it specifically states that it "does not waive its arguments" as to other Policy exclusions.  ECF No. 44, at 13 n.1.  Later, RLI clarifies that it is not relying on any other exclusion "at this stage in the proceeding," but may rely on them to negate a potential duty to indemnify.  ECF No. 59, at 33.  Accordingly, the court will only address the Policy's contract exclusion.

Both parties focus on the phrase "arising out of" to determine the scope of the exclusion because it is potentially the broadest phrase in the exclusion.[10]  RLI contends that "arising out of"—as it is used in the Policy—should mean "incidental relationship" or "incident to, or having a connection with."  ECF No. 44, at 14-15.  Defendants respond by agreeing that "arising out of" means "incident to, or having a connection with," but they contend that the phrase also requires a *causal* connection.

The court holds that scope of the phrase "arising out of" requires a causal and incidental relationship between the contractual obligation or breach, and the claim.  It is well settled that the relationship must be causal.  *See Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 926 (N.D. Tex. 2009) (Fitzwater, C.J.) ("It is clear that, under Texas law, the phrase 'arising out of' means a causal connection."); *Utica Nat'l Ins. Co. of Tex. v. Am. Indemn. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("This Court has held that 'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." (internal citation omitted)).  But a causal relationship does not require that the contract directly caused

---

[10]Defendants urge the court to look to other language in the Policy preceding and following "arising out of"—such as "based upon" and "resulting from," which both suggest a narrow, direct causal relationship—to inform the court's interpretation of "arising out of." ECF 50, at 34-35.  Indeed, courts have found the narrowness of other terms to be important when defining the scope of "arising out of."  *See Admiral Ins. Co. v. Briggs*, 264 F.Supp.2d 460, 462-63 (N.D. Tex. 2003) (Godbey, J.).

This court need not address this narrower language, however, because even if "arising out of" is given its broadest reading, it still does not extend the Policy's contract exclusion to the Underlying Lawsuit.  *See infra* at § IV(B)(2).

the harm.  *Gemini Ins. Co. v. Andy Boyd Co.*, 243 Fed. Appx. 814, 816 (5th Cir. 2007).

Further, the strength of this causal relationship must be only "incidental": "Under Texas law,

when an exclusion prevents coverage for injuries 'arising out of' particular conduct, '[a]

claim need only bear an *incidental relationship* to the described conduct for the exclusion to

apply.'"  *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003)

(alteration and emphasis in original) (quoting *Scottsdale Ins. Co. v. Tex. Sec. Concepts &*

*Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)).

There is a causal, incidental relationship when the claims at issue depend on the

breach of contract or obligation under the contract.  *See Sowell*, 603 F.Supp.2d at 928.  In

*Sowell* a lease between a company and a lessor required the company to obtain adequate

insurance for the leased property—which the company failed to do.  *Id.*  The lessor asserted

a negligence claim against the company for failing to obtain insurance.  *Id.*  But the duty for

the negligence claim arose from an obligation under the contract to maintain insurance.  *Id.*

The court therefore held that the negligence claim "arose from" the contract.  *Id.*

There is no causal, incidental relationship if the claims do not depend on the breach

of contract or obligation under the contract.  *See Admiral Ins. Co. v. Briggs*, 264 F.Supp.2d

460, 463 (N.D. Tex. 2003) (Godbey, J.).  In *Briggs* a corporation made misrepresentations

regarding its future success to a lessor.  *Id.*  The corporation's misrepresentations persuaded

the lessor to accept stock instead of cash for payment of a lease.  *Id.*  The lessor sued the

corporation for securities fraud in the underlying lawsuit.  *Id.*  In deciding that the insurer had

a duty to defend (the insurer had issued a policy to the corporation that excluded claims

- 11 -

arising out of contract), the court held that the lease was irrelevant because the claim asserted (securities fraud) occurred independently of the lease at the moment the company made the misrepresentations to the lessor. *Id*. at 462-63. In other words, "[t]he lease contract did not cause the stock fraud claim, it simply provided the context in which the stock fraud took place." *Id.*

B

The court next applies the Policy's contract exclusion and the court's interpretation of the phrase "arising out of" to the facts alleged in the petition in the Underlying Lawsuit. In doing so, the court liberally construes the allegations against the insured in favor of coverage and resolves all doubts regarding the duty to defend in favor of the duty.

1

RLI argues that, applying the "incidental relationship" definition of "arising out of" to PowerFX's pleading, it is clear that the facts PowerFX alleges state a claim for a breach of contract rather than the claims listed in the pleading (fraudulent inducement and negligent misrepresentation). RLI points to PowerFX's focus on the "massive profits" it suffered in damages, which are damages normally related to breach of contract. RLI contends that even the out-of-pocket expenses alleged by PowerFX were related to "the contractual right to market the Battery Medic technology" and therefore arise out of the Agreement. ECF No. 59, at 9.

Defendants respond that there can be no causal relationship because the misrepresentations occurred before any contract was formed. Defendants also posit that, had

- 12 -

a breach of the Agreement not occurred, PowerFX would still have a claim —based on statements made before the Agreement was entered into—because the misrepresentations themselves caused harm. Finally, Defendants contend that RLI's interpretation of "arising out of" would expand the definition too far and make insurance coverage "illusory" because contracts are so pervasive throughout business and would be involved in some way in every suit. ECF No. 48, at 30.

2

The court agrees with Defendants that the exclusion does not apply. Liberally construing the allegations in the Underlying Lawsuit in favor of coverage and resolving all doubts regarding the duty to defend in favor of the duty, the court concludes from its reading of the Policy and PowerFX's petition that PowerFX's claims for fraudulent inducement and negligent misrepresentation do not arise from an obligation or breach of the contract. Moreover, the case law confirms the court's reading, and RLI's arguments to the contrary are not persuasive.[11]

The Policy and the petition in the Underlying Lawsuit show that there is no "alleged obligation under or breach of any written, oral . . . contract or agreement."[8]  First, the

---

[11]Because the court concludes that the Policy's contract exclusion does not apply, the court need not reach the parties' arguments as to whether the exception to the exclusion applies.

[8]The court notes that many of the cases cited below use even *broader* language than in this case. For example, in *Sowell* and *Briggs* the contract exclusion covered any claim "in any way involving" a contract. *E.g., Sowell*, 603 F.Supp.2d at 926. The court notes this to emphasize the more restrictive wording of the Policy at issue in this case.

pleading states no facts for the court to conclude that any *breach* occurred.  PowerFX alleges that on March 20, 2017 it signed a contract with PowerCare to market the Battery Medic. The Agreement provided*, inter alia*, that PowerCare "was obligated to deliver and provide maintenance" for its cloud-based battery rejuvenation and management solution product named "Battery Medic," and it appears that PowerCare did exactly that.  ECF No. 44-1, App. at 98 n.2, 101.  PowerCare gave Power FX the product, albeit a bad product.[9]  *E.g., id.* at 101-02 ("[T]he first round of Battery Medics were delivered to customers.").  And it seems that PowerCare did attempt to provide maintenance as well.  *See id.* at 102 (suggesting that PowerCare was working on getting the product working).

The petition also does not plead *obligations* under the Agreement that gave rise to the claims.  As discussed, the Agreement required PowerCare "to deliver and provide maintenance" for its cloud-based battery rejuvenation and management solution product named "Battery Medic."  *Id.* at 98, n.2, 101.  The fraudulent inducement and negligent misrepresentation claims, however, do not depend on (i.e., "arise out of") obligations or duties under the Agreement (which relate to *delivering* the product) but instead from misrepresentations (which relate only to the *quality* of the product).

The court recognizes that "the factual allegations instead of the legal theories alleged" in the complaint control whether the Policy imposes a duty to defend.  *See Mid-Continent*

---

[9]While the pleading does state that "[t]o this day, a functioning and marketable Battery Medic has not been delivered to any customers of Plaintiff," this supports the interpretation that the Battery Medic was delivered, but that a "functioning and marketable" Battery Medic—i.e., a good one—was not delivered.  ECF No. 44-1, App. at 103.

*Cas. Co. v. Acad. Dev., Inc*., 476 Fed. Appx. 316, 319 (5th Cir. 2012) (per curiam) (citation omitted).  And "[a]rtful pleadings of facts cannot bring excluded claims back within the policy's coverage." *Sowell*, 603 F.Supp.2d at 928 (citation omitted).

But the court reaches its conclusion (in part) because of its responsibility to resolve doubts in favor of the insured.  As discussed above, the court must "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich Am. Ins. Co.*, 268 S.W.3d at 491. The court must liberally construe PowerFx's petition in favor of coverage.  *See GuideOne Elite Ins. Co*, 197 S.W.3d at 308; *see also Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141 ("When applying the eight corners rule, we give the allegations in the petition a liberal interpretation.").  And the pleading simply contains no facts for the court to conclude (beyond the doubts it must resolve in Defendants' favor) that a breach occurred or that the claims arise from obligations under the Agreement.[10]

The court's analysis is consistent with the holdings of other courts.  The parties focus the majority of their briefing on case law.  RLI cites cases that—applying similar insurance "arising out of" contract provisions—have held that misrepresentations made before a contract was formed might still "arise out of" that contract.  *See Fed. Ins. Co. v. KDW Restructuring & Liquidation Servs., LLC*, 889 F.Supp.2d 694, 708 (M.D. Pa. 2012) ("Had the class plaintiffs not entered into the contracts and had Uni–Marts not breached the

---

[10]Furthermore, although the court may draw reasonable inferences from the pleading, *see Allstate Insurance Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005), the court's analysis is limited under the eight-corners rule, and the court must take the facts pleaded as true.  *See Liberty Mut. Ins. Co.*, 473 F.3d at 600.

contracts, there would be no independent tort claims."); *Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.,* 591 F.Supp.2d 651, 663 (S.D.N.Y. 2008) ("[T]o the extent the Underlying Complaint states valid fraud and negligent misrepresentation claims against Julio & Sons, the claims would not exist but for the express agreement . . . .") (applying Texas law); *GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 520 F.Supp.2d 213, 228 (D. Mass. 2007) (same); *see also Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2014 WL 5325728, at *7 (M.D. Fla. Oct. 20, 2014) (collecting cases), *aff'd*, 628 Fed. Appx. 648 (11th Cir. 2015).

For example, in one of these cases, *AKN Holdings, LLC v. Great America E and S Insurance Co.*, 2021 WL 2325647 (C.D. Cal. May 14, 2021), the court held that pre-contract misrepresentations arose from the subsequent contract because the two were intertwined. *Id.* at *4. In *AKN Holdings* the insured in the underlying litigation was facing claims for fraudulent representation and concealment. *Id.* at *3. The plaintiff in the underlying litigation alleged that the insured induced it to enter a contract with the insured even though the insured never had an intent to satisfy the contract. *Id.* The court held that "[t]hough the claims sound in fraud, they have far more than 'an incidental relationship' to the breached contracts." *Id.* In fact, "the very existence of the fraudulent scheme is premised on Plaintiff's intent for the contracts to be entered and then breached." *Id.* The fraud claims were "inextricably entwined with the alleged breach of [contract]." *Id.* at *4.

Similarly, in *Federal Insurance* the court held that pre-contract promises depended on the contract. *Fed. Ins. Co.*, 889 F.Supp.2d at 710. In *Federal Insurance* the complaint

- 16 -

in the underlying litigation alleged that the insured made pre-contract misrepresentations that induced the plaintiff to enter the contract. *Id.* at 707. The court held that the pre-contract promises relied on for the negligent misrepresentations and fraud claims were incorporated into the contracts, and that, in the absence of the contracts, there would be no liability under either claim. *Id.* The court also held that, but for the breach of contract, no damages would have been suffered. *Id.* 708-09. In this way the fraudulent pre-contract promises—later included as terms within the contract—created liability and damages only *because of* the breach of contract.

Defendants cite opposing precedent, which they argue supports different conclusions. For example, they cite *Church Mutual Insurance Co. v. United States Liability Insurance Co.*, 347 F.Supp.2d 880 (S.D. Cal. 2004), which held that pre-contract misrepresentations were the basis for claims of fraud, independent of the contract. *Id.* at 889. In *Church Mutual* a church entered a contract with a construction company but had no intention to abide by its terms. *Id.* The court held that the "gravamen of" the construction company's claims against the church were "fraud rather than breach of contract" because the failure to perform the contract was due to the church's fraudulent intent. *Id.* As such, the fraud claims did not arise out of contract but were independent of it. *Id.*

Defendants also cite *McPeek v. Travelers Casualty and Surety Co. of America*, 2006 WL 1308087 (W.D. Pa. May 10, 2006), which held that pre-contract misrepresentations could be the basis for negligent misrepresentation claims independent of the contract. *Id.* at *4. In *McPeek* a party made a variety of misrepresentations that induced the plaintiff to

make the party a loan and accept a note (which went unpaid) as consideration for a loan. *Id.* at *3. The court held that the plaintiff's claims did not arise out of any contract because the tortious conduct (the fraudulent misrepresentations) *preceded* the purchase of the note; instead, the claims arose out of the pre-contract misdeeds. *Id.* at *4.

The court concludes that most of these cases are not inconsistent and seem to stand for the following three propositions:[9] that tort claims "arise out of" a contract when the fraudulent representations giving rise to those claims are memorialized in the contract, *Fed. Ins. Co.*, 889 F.Supp.2d at 707; that when the duty for the tort comes from the contract, the tort claims arise out of the contract, *Sowell*, 603 F.Supp.2d at 927-28; and that tort claims based on fraudulent misrepresentations that do not fit in these categories do not arise out of contract, *see McPeek*, 2006 WL 1308087, at *3; *Briggs*, 264 F.Supp.2d at 462-63. In other

---

[9]There is some tension in the case law, but the court need not resolve it. For example, it is difficult to reconcile the cases where the prior misrepresentations were not included within the contract but were *intertwined* with the conduct. Both *Church Mutual* and *AKN Holdings* appear to involve fraud schemes where the defendant made misrepresentations to induce the plaintiff to enter a contract, but always intended to breach the contract. *See Church Mut. Ins. Co.*, 347 F.Supp.2d at 889 ("Blue Sky alleged that, with Corona's advice, Skyline was involved in a pattern and practice to defraud contractors by entering into contracts without intention to pay."); *AKN Holdings*, 2021 WL 2325647, at *3 ("In other words, the very existence of the fraudulent scheme is premised on Plaintiff's intent for the contracts to be entered and then breached."). But despite the factual similarities in these cases, the courts reached opposite conclusions. *See Church Mut. Ins. Co.*, 347 F.Supp.2d at 889 ("Focusing on the facts alleged rather than on the theories of recovery, the gravamen of Blue Sky's claims against Skyline is fraud rather than breach of contract."); *AKN Holdings*, 2021 WL 2325647, at *3 ("Though the claims sound in fraud, they have far more than an 'incidental relationship' to the breached contracts."). The court need not resolve this tension because, even assuming *arguendo* that the case supporting RLI (*AKN Holdings*) was correctly decided, it can be distinguished from this case as discussed above.

words, as essentially codified in the Policy in this case, the claims must come from violations of obligations of the contract or breach of the contract.[10]

In this case, the fraud claims based on misrepresentations are not intertwined with the contract (as in *Church Mutual* and *AKN Holdings*); the duties for these claims do not arise from the contract (as in *Sowell*); and misrepresentations were not memorialized in the contract (as in *Federal Insurance*).  Rather, like *Briggs* and *McPeek*, the claims at issue do not arise out of obligations or breach of contract.[11]

First, this case is not similar to *AKN Holdings* because PowerCare and Interstate Battery System's fraudulent inducement and PowerFX's claim are not intertwined with the

---

[10]Some cases appear to be in tension with this framework, but the court can distinguish them.  In one case that RLI cites, *Scottsdale Insurance Co. v. Mt. Hawley Insurance Co.*, 2011 WL 9169946 (S.D. Tex. June 15, 2011), *aff'd*, 488 Fed. Appx. 859 (5th Cir. 2012), the court held that "[the] claims arise out of alleged breaches of the construction contract and/or D & F subcontract, and Plaintiffs do not suggest otherwise."  *Id.* at *6.  Accordingly, because the plaintiffs appear to have conceded the issue, this case is not useful in the court's analysis.
Further, RLI relies on *Global Holdings, LLC v. Navigators Management Co.*, 2020 WL 3065914 (E.D. Ky. June 9, 2020).  But the *Global Holdings* court applied another state's law to a broader insurance policy provision.  *Id.* at *6-7 ("The breadth of the exclusionary language is key.").  So the *Global Holdings* court's analysis is not persuasive.

[11]Judge Godbey has identified tension within this court concerning whether a negligent misrepresentation claim requires a "special relationship" or prior misrepresentation. *See Correct Rx Pharmacy Servs., Inc. v. Cornerstone Automation Sys., LLC*, 2018 WL 4680568, at *2 n.5 (N.D. Tex. Sept. 28, 2018) (Godbey, J.).  If the claim were to need a "special relationship," it would be dependent on the contract to create that relationship.  *See Julio & Sons Co.*, 591 F.Supp.2d at 663.  The court need not address this tension, however, because it appears well-settled that a duty to refrain from negligent misrepresentation can arise outside a contract, such as when a prior misstatement of fact was made: "[e]ven without a special relationship, there is always a duty to correct one's own prior false or misleading statement."  *Trs. of the Nw. Laundry & Dry Cleaners Health & Welfare Tr. Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994).

Agreement.  In *AKN Holdings* the intent of the defendant was to make misrepresentations to convince the plaintiff to enter a contract and then breach the contract—in other words, the defendant never intended to abide by the contract.  *See AKN Holdings*, 2021 WL 2325647, at *3.  In this way, the fraudulent intent was bound up with the contract—the contract was part of the larger fraudulent scheme.

Here, the alleged misrepresentations related to whether the Battery Medic was a good product, and whether Power Care and Interstate Battery System intended to deceive PowerFX that this was true.  But, unlike *AKN Holdings*, it appears from the allegations in the Underlying Lawsuit that PowerCare and Interstate Battery System wanted to enter the contract and intended to abide by their contractual commitments (i.e., providing the Battery Medic to PowerFX).  They just did not provide a good product, as promised, provide the promised training staff, provide the promised capital, or meet certain deadlines. Accordingly, the court cannot conclude, as in *AKN Holdings*, that the fraud alleged in this case is intertwined with the contract, because the alleged misrepresentations of PowerCare and Interstate Battery System were not a part of a larger fraudulent scheme to induce PowerFX into a contract that PowerCare and Interstate Battery System intended to breach.

Further, this lawsuit is not similar to the cases where the duty arose from the contract, or the misrepresentations were memorialized in the contract.  In most of the cases RLI cites in support of its argument, the tort duties—whether for negligence or another tort— arose specifically from the contract.  *See Sowell*, 603 F.Supp.2d at 927-28 ("The duty to obtain insurance on the Leased Property arises directly and exclusively from the terms of the

lease."); *Julio & Sons Co*, 591 F.Supp.2d at 663 (holding that duty for negligent misrepresentation arose from the contractual relationship between the parties); *GE HFS Holdings*, 520 F.Supp.2d at 229 ("Here the DIP Loan and the obligation to provide information thereunder did, in fact, form the basis of Heller's claims."); *Fed. Ins. Co.*, 889 F.Supp.2d at 708 ("The tort claims are for Uni-Marts' violations of 'the representations, warranties, and express or implied covenants of the Purchase Agreement and the Right of First Refusal Agreement and, by overcharging for gasoline deliveries, the Fuel Service Agreement.'"); *Bond Safeguard Ins.*, 2014 WL 5325728, at *2, 8 (holding that claims arose from contract when contract imposed duty to disclose certain information); *Arch Ins. Co. v. United States Youth Soccer Ass'n*, 2014 WL 2941372, at *5 (Tex. App. May 12, 2014, no pet.).

These facts are not present here: these claims do not arise from obligations contained in the Agreement or breaches of the Agreement.[12]  Rather, PowerFX's suit bears similarities to the lawsuits in *McPeek* and *Briggs*.  In both cases, misrepresentations were made before the plaintiff entered into the contract, and the duties giving rise to claims based on those misrepresentations were independent from the contract.  *See Briggs*, 264 F.Supp.2d at 463; *McPeek*, 2006 WL 1308087, at *4.  The same is true here.  And in both cases the fraudulent

---

[12]While many of these misrepresentations—related to the quality of the Battery Medic product and the amount of capital Interstate Battery System intended to spend—*may* have been memorialized in the contract, the petition contains no facts for the court to conclude that the contract contains these terms.  *Cf. Fed. Ins. Co.*, 889 F.Supp.2d at 708 (pointing to language in the pleading showing that the contract contained the duty).

misrepresentations were meant to induce the plaintiff into the contract, but the misrepresentations otherwise were not a part of the contract. *See Briggs*, 264 F.Supp.2d at 463; *McPeek*, 2006 WL 1308087, at *4.

RLI's other arguments fail to persuade the court that it is misreading the petition in the Underlying Lawsuit, the Policy, and the case law.[13]  RLI first contends that the damages pleaded are breach of contract damages, and, therefore, that this must be PowerFX's claim. But the damages sought—in the form of lost profits—are consequential damages that may be sought on a fraudulent inducement claim.  *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 276 (5th Cir. 2012) ("[L]ost profits are cognizable under Texas law, they are appropriately compensated through consequential damages, not benefit-of-the-bargain damages."); *Hoffman v. L & M Arts*, 838 F.3d 568, 578 (5th Cir. 2016) (holding that fraudulent inducement claims may seek consequential damages).[14]

 RLI also posits that, for PowerFX to have earned its profits or state a claim for fraudulent inducement, it would have needed to have some sort of contractual relationship

_____

[13]RLI maintains that, even if PowerFX could assert *some* claims that do not arise out of the contract, "coverage would still be excluded."  ECF No. 44, at 18.  But this begs the question as to why coverage would be excluded.  And for the reasons explained above, the court concludes that the claims PowerFX alleges in the Underlying Lawsuit do not arise out of the contract.

[14]This court does not decide whether these damages can be recovered under either a fraudulent inducement or negligent misrepresentation theory.  The court's analysis is limited to whether the petition in the Underlying Action states a claim that arises out of a breach or obligation under a contract, which it does not. The court does not address whether the negligent misrepresentation and fraudulent inducement claims would be successful, or whether PowerFX has pleaded all the elements of these claims.

with PowerCare.  But even if this is assumed to be true, the same was likely true in *Briggs*, because the stock fraud required the agreement to accept the stock.  *See Briggs*, 264 F.Supp.2d at 463.  Rather, in this case, as in *Briggs*, the "contract did not cause the [tort] claim, it simply provided the context in which the [tort] took place."  *Id.*  As the Policy and case law make clear, the key is whether the claim arises from a breach of contract or obligation under the contract, not whether there existed a contract at all.[15]

*    *    *

Accordingly, for the reasons explained, the court grants Defendants' cross-motion for partial summary judgment and holds that RLI has a duty to defend Defendants in the Underlying Lawsuit.  The court denies RLI's motion for partial summary judgment.

**SO ORDERED**.

November 5, 2021.

SIDNEY A. FITZWATER
SENIOR JUDGE

_____

[15]The court does not address the duty to indemnify because it is not briefed by the parties in detail, and "an insurer's duty to indemnify typically can be resolved only after the conclusion of the underlying action." *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011).

- 23 -